1  Mark E. Ellis - 127159
   June D. Coleman - 191890
2  ELLIS, COLEMAN, POIRIER, LAVOIE, & STEINHEIMER LLP
   555 University Avenue, Suite 200 East
3  Sacramento, CA 95825
   Tel: (916) 283-8820
4  Fax: (916) 283-8821

5  Attorneys for
   DIVERSE FUNDING ASSOCIATES, LLC, JASON J. EVANS, EVANS LAW ASSOCIATION,
6  P.C., THE LAW OFFICES OF JASON EVANS, P.C., FIRST CHOICE ASSETS LLC, DELTA
   GROUP, JOSEPH COLOSIMO, AND JOSEPH ORTIZ & EPSTEIN LLC

7

8

9                    UNITED STATES DISTRICT COURT

10           U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORN

11                    NORTHERN, SAN JOSE DIVISION

12  HELEN BUNCH and BRAD BUNCH,          Case No.: 07-CV-03731 JW

13           PLAINTIFFS,                 **DEFENDANTS' ADMINISTRATIVE
                                         REQUEST TO EXTEND DEADLINE TO
14  v.                                   CONDUCT MEDIATION**

15  DIVERSE FUNDING ASSOCIATES, LLC, ET  CURRENT
    AL.,                                 DEADLINE:          May 31, 2008
16
             DEFENDANTS.                 REQUESTED
17                                       DEADLINE:          June 30, 2008

18

19        Pursuant to ADR Rule 6-5, Defendants request that this Court extend the deadline to conduct a

20  mediation session through the Northern District's ADR Program. At this point, defendants request this

21  to permit all relevant parties to participate in the mediation session.

22        This case involves allegedly wrongful collection conduct. The operative complaint alleges

23  wrongful conduct by Johnson in various telephone calls. (First Amended Complaint ("FAC"), a true

24  and correct copy of which is attached hereto as **Exhibit A**, ¶¶ 59-116, 123-133.) Although the

25  operative complaint alleges that Johnson is an employee/agent of one or more of the defendants,

26  deposition testimony has clearly established that Johnson is an employee of Joseph Ortiz & Epstein

27  dba Delta Group. Defendants do not believe that plaintiffs contest this issue. It is not until Paragraph

28  117 of the FAC that plaintiffs make any allegations against the DFA/Evans Defendants. Plaintiffs'

- 1 -

only allegations against the Evans Defendants are that (1) an unidentified Evans employee received a phone call from Mr. Bunch and clarified that the account had not been referred to Evans, but was being handled by Delta Group (FAC, ¶¶ 117-122), and (2) Evans failed to respond to a letter of dispute from Mrs. Bunch (FAC, ¶ 134.)  The only allegation against Diverse Funding is that Diverse Funding sent the Internal Revenue Service and Ms. Bunch a 1099 tax form.  (FAC, ¶¶ 136-143.)  The issuance of a 1099 Form does not fall within the purview of the FDCPA; it is not collection activity.  (See **Posso v. Asta Funding Inc.** (N.D. Ill. 2007) 2007 WL 3374400, *1-4.)

This case was initially ordered to mediation on October 22, 2007.  Based on the date of this Order, the mediation session should have been conducted by approximately January 20, 2008.

The ADR Program assigned a mediator on or about November 29, 2007, but plaintiff's objected to the mediator.  The ADR Program vacated the appointment of the mediator, and then had difficulty finding a mediator.  The ADR Program set a telephone conference for January 14, 2008, at which time they explained to the parties that they were having difficulties finding a mediator to take the case.  The ADR Program requested that the parties extend the deadline, and the parties requested that the deadline be extended to May 31, 2008.

A mediation session was scheduled for May 12, 2008.  However, after the mediation session was scheduled, scheduling issues arose.  Diverse Funding and the Evans defendants would suffer a great burden to participate in person on May 12, 2008.  Their request for telephonic appearance, which was opposed by plaintiffs, was denied.  Mr. Bunch also could not attend, and the remaining defendant, Joseph Ortiz & Epstein dba Delta Group, could not attend because the representative's wife was having a baby.  The parties stipulated to the telephonic standby attendance of these parties, and an order was issued to permit their telephonic standby appearances.  However, now, the mediation session will involve one plaintiff and two defendants who at best have minimal liability.  (Defendants believe that these two defendants actually have no liability.)  It is apparent even to the mediator that it makes sense to continue the mediation session.  (See E-Mail, attached hereto as **Exhibit B** (mediator's email is the first email message on the email).)

Defendants have been attempting to address this issue with plaintiffs' counsel.  Defense counsel has called and/or emailed both Mr. Ron Wilcox and Mr. Joe Mauro every day since May 2,

1    2008.  (See, e.g., E-Mail, **Exhibit C** (J. Coleman's e-mail is the last email message on the exhibit).)

2    Neither have telephoned or emailed to discuss this issue.  As noted above, the mediator has also

3    emailed to request the pros and cons of going forward with the May 12, 2008 mediation session, and

4    defense counsel is not aware of any attempt by plaintiff's counsel to respond to the mediator.

5    Defendants have determined that all three sets of defendants and defense counsel and the mediator are

6    available for a mediation session on June 19, 2008.  Plaintiffs' counsel has not responded as to their

7    availability, or the availability of plaintiffs.

8        However, in order to conduct the mediation session on June 19, 2008, defendants need to

9    extend the deadline to conduct the mediation session.  For this reason, Defendants request that the

10    deadline to conduct the mediation be extended from May 31, 2008, to June 30, 2008.

11

12    Dated: May 8, 2008

                            Ellis, Coleman, Poirier, LaVoie, & Steinheimer LLP

13

14                             By   /s June D. Coleman

                                June D. Coleman

15                                 Attorney for

                                DIVERSE FUNDING ASSOCIATES, LLC, JASON

16                                 J. EVANS, EVANS LAW ASSOCIATION, P.C.,

                                THE LAW OFFICES OF JASON EVANS, P.C.,

17                                 FIRST CHOICE ASSETS LLC, DELTA GROUP,

                                JOSEPH COLOSIMO, AND JOSEPH ORTIZ &

18                                 EPSTEIN LLC

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I, Jennifer E. Mueller, declare:

I am a citizen of the United States, am over the age of eighteen years, and am not a party to or interested in the within entitled cause. My business address is 555 University Avenue, Suite 200 East, Sacramento, CA 95825.

On May 8, 2008, I served the following document(s) on the parties in the within action:

## DEFENDANTS' REQUEST TO EXTEND DEADLINE TO CONDUCT MEDIATION

| | |
|---|---|
| X | **VIA ELECTRONIC SERVICE**: The above-described document(s) will be delivered electronically through the Court's ECF/PACER electronic filing system, as stipulated by all parties to constitute personal service, to the following: |

| | |
|---|---|
| Joseph Mauro<br>Law Offices of Joseph Mauro, LLC<br>306 McCall Avenue<br>West Islip, NY 11795 | Attorneys for<br>Plaintiff HELEN BUNCH and BRAD BUNCH |
| Ronald Wilcox<br>2160 The Alameda<br>First Floor, Suite F<br>San Jose, CA 95126 | Attorneys for<br>Plaintiff HELEN BUNCH and BRAD BUNCH |

| | |
|---|---|
| X | **VIA E-MAIL**: The above-described document(s) will be delivered by e-mail, to the following: |

| | |
|---|---|
| Henry Hewitt<br>Erickson Beasley & Hewitt<br>483 Ninth Street<br>Oakland, CA 94607 | Mediator |

| | |
|---|---|
| X | **VIA FACSIMILE**: The above-described document(s) will be transmitted via facsimile, and a copy of same will be mailed, on this same date to the following |

| | |
|---|---|
| United States District Court<br>Northern District<br>ADR Unit<br>Fax: 415-522-4112 | ADR Department |

///

- 4 -

1      I declare under penalty of perjury under the laws of the State of California that the foregoing is

2 a true and correct statement and that this Certificate was executed on May 8, 2008.

3

4                     By _____

                        Jennifer E. Mueller

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ronald Wilcox, Esq., 176601
2160 The Alameda, First Floor, Suite F
San Jose, CA 95126
Tel: (408) 296-0400
Fax: (408) 296-0486
ronaldwilcox@post.harvard.edu

**ATTORNEY FOR PLAINTIFF**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| HELEN BUNCH and BRAD BUNCH, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.:  C07-03731 RS |
| ) | |
| v. ) | |
| ) | |
| DIVERSE FUNDING ASSOCIATES, LLC ) | |
| JOSEPH, ORTIZ & EPSTEIN, LLC, ) | |
| DELTA GROUP, JOSEPH COLISIMO, ) | |
| WILLIAM "BILL" JOHNSON, JASON J. EVANS,) | |
| EVANS LAW ASSOCIATES, P.C., ) | |
| THE LAW OFFICE OF JASON J. EVANS, P.C., ) | |
| and FIRST CHOICE ASSETS, LLC, ) | |
| ) | |
| Defendants. ) | |

## FIRST AMENDED COMPLAINT

## DEMAND FOR JURY TRIAL

## I.  INTRODUCTION

1.   Defendants extorted money from a consumer by impersonating the police department,

pretending they were attorneys, and making false threats of immediate arrest for failure to

pay an alleged 10-year old debt.  Defendants demanded that unless payment was wired



**EXHIBIT**

_A_

1    within one-hour they would execute on a warrant already issued.  Plaintiffs did not owe the

2    debt, but paid it out of fear of being incarcerated.

3  2.  This is an action for damages brought by consumers to redress the Defendant's violations of

4    the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. (hereinafter "FDCPA") and

5    California's Rosenthal Fair Debt Collection Practices Act, Civil Code §1788 et seq.

6    (hereinafter, "state Act"), and related common law claims, which prohibit debt collectors

7    from engaging in abusive, deceptive and unfair practices in their collection of consumer

8    debts.

9  3.  According to 15 U.S.C. §1692:

10

11    (a) There is abundant evidence of the use of abusive, deceptive, and unfair debt
      collection practices by many debt collectors. Abusive debt collection practices

12    contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs,
      and to invasions of individual privacy.

13
      (b) Existing laws and procedures for redressing these injuries are inadequate to protect
14    consumers.

15    (c) Means other than misrepresentation or other abusive debt collection practices are
      available for the effective collection of debts.
16
      (d) Abusive debt collection practices are carried on to a substantial extent in interstate
17    commerce and through means and instrumentalities of such commerce. Even where
      abusive debt collection practices are purely intrastate in character, they nevertheless
18    directly affect interstate commerce.

19
      (e) It is the purpose of this title to eliminate abusive debt collection practices by debt
20    collectors, to insure that those debt collectors who refrain from using abusive debt
      collection practices are not competitively disadvantaged, and to promote consistent State
21    action to protect consumers against debt collection abuses.

22
## II. JURISDICTION AND VENUE
23
24  4.  Jurisdiction of this Court arises under 15 U.S.C. sec. 1692k(d), 28 U.S.C. sec. 1337, and

25    supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. sec. 1367.

2

1  Venue in this District is proper in that Defendant transacts business here and the conduct

2  complained of occurred here.

### III. PARTIES

5. Plaintiff HELEN BUNCH (hereinafter "MRS. BUNCH") is a natural person residing in Santa Clara County, California.

6. MRS. BUNCH is "consumer" as that term is defined under 15 U.S.C. §1692(a)(3) and under California Civil Code §1788.2. MRS. BUNCH is a "debtor" as defined by California Civil Code §1788.2.

7. Plaintiff BRAD BUNCH (hereinafter "MR. BUNCH") is a natural person residing in Santa Clara County, California.

8. MR. BUNCH is "consumer" as that term is defined under 15 U.S.C. §1692(a)(3) and under California Civil Code §1788.2, is a "debtor" as defined by California Civil Code §1788.2.

9. Defendant DIVERSE FUNDING ASSOCIATES, LLC (hereinafter "DIVERSE FUNDING"), is a foreign Limited Liability Company corporation with a principal place of business at 3580 Harlem Rd., Suite 6, Buffalo, NY 14215, and who regularly engages in the business of collecting debts owed to third parties, and seeks to collect debts that have already gone into default.

10. DIVERSE FUNDING is not authorized to do business in the state of California.

11. DIVERSE FUNDING regularly engages in the business of collecting debts on its behalf in Santa Clara County, California, through means of interstate commerce, including the United States mails and the telephone. DIVERSE FUNDING'S principal purpose is the collection of debt.

12. DIVERSE FUNDING is a "debt collector" as defined by 15 U.S.C. §1692(a)(6).

3

13. DIVERSE FUNDING is a "debt collector" as defined by California Civil Code §1788.2.

14. Defendant JASON J. EVANS is a natural person residing in the State of New York.

15. Defendant JASON J. EVANS is a licensed attorney in the State of New York.

16. Defendant JASON. J. EVANS is an owner, principal, manager, officer, director, and/or shareholder of co-defendant DIVERSE FUNDING.

17. Defendant JASON J. EVANS is the principal of co-defendant EVANS LAW ASSOCIATES, P.C. and THE LAW OFFICE OF JASON J. EVANS, P.C.

18. Defendant JASON J. EVANS regularly engages in the business of collecting debts owed to third parties, and seeks to collect debts that have already gone into default.

19. Defendant JASON J. EVANS regularly engages in the business of collecting debts in Santa Clara County, California, through means of interstate commerce, including the United States mails and the telephone.

20. Defendant JASON J. EVANS is a "debt collector" as defined by 15 U.S.C. §1692(a)(6).

21. Defendant EVANS LAW ASSOCIATES, P.C. is a foreign corporation with a principal place of business at 3842 Harlem Rd., Suite 400-329, Cheektowaga, NY 14215, and who regularly engages in the business of collecting debts owed to third parties, and seeks to collect debts that have already gone into default.

22. Defendant EVANS LAW ASSOCIATES, P.C. regularly engages in the business of collecting debts owed to third parties, and seeks to collect debts that have already gone into default.

23. Defendant EVANS LAW ASSOCIATES, P.C. regularly engages in the business of collecting debts in Santa Clara County, California, through means of interstate commerce, including the United States mails and the telephone.

4

24. Defendant EVANS LAW ASSOCIATES, P.C. is a "debt collector" as defined by 15 U.S.C. §1692(a)(6).

25. Defendant EVANS LAW ASSOCIATES, P.C. is a "debt collector" as defined by California Civil Code §1788.2.

26. EVANS LAW ASSOCIATES, P.C. is not authorized to do business in the state of California.

27. Defendant THE LAW OFFICE OF JASON J. EVANS, P.C. is a foreign corporation with a principal place of business at 3580 Harlem Rd., Suite 6, Buffalo, NY 14215, and who regularly engages in the business of collecting debts owed to third parties, and seeks to collect debts that have already gone into default.

28. Defendant THE LAW OFFICE OF JASON J. EVANS, P.C. regularly engages in the business of collecting debts owed to third parties, and seeks to collect debts that have already gone into default.

29. Defendant THE LAW OFFICE OF JASON J. EVANS, P.C. regularly engages in the business of collecting debts in Santa Clara County, California, through means of interstate commerce, including the United States mails and the telephone.

30. Defendant THE LAW OFFICE OF JASON J. EVANS, P.C. is a "debt collector" as defined by 15 U.S.C. §1692(a)(6).

31. Defendant THE LAW OFFICE OF JASON J. EVANS, P.C. is a "debt collector" as defined by California Civil Code §1788.2.

32. THE LAW OFFICE OF JASON J. EVANS, P.C. is not authorized to do business in the state of California.

33. Defendant JOSEPH, ORTIZ, AND EPSTEIN, LLC, (hereinafter "EPSTEIN LLC") is a foreign limited liability company with a principal place of business at 3842 Harlem Rd., Suite 400-156, Buffalo, NY 14215, and who regularly engages in the business of collecting debts owed to third parties, and seeks to collect debts that have already gone into default.

34. EPSTEIN LLC is not authorized to do business in the state of California.

35. EPSTEIN, LLC regularly engages in the business of collecting debts on its behalf in Santa Clara County, California, through means of interstate commerce, including the United States mails and the telephone. EPSTEIN LLC's principal purpose is the collection of debts.

36. EPSTEIN LLC is a "debt collector" as defined by 15 U.S.C. 1692(a)(6).

37. EPSTEIN LLC is a "debt collector" as defined by California Civil Code 1788.2.

38. DELTA GROUP is an unincorporated New York business entity with a principal place of business at 3842 Harlem Rd., Suite 400-156, Buffalo, NY 14215, who regularly engages in the business of collecting debts owed to third parties, and seeks to collect debts that have already gone into default.

39. DELTA GROUP is not authorized to do business in the state of California.

40. DELTA GROUP regularly engages in the business of collecting debts on its behalf in Santa Clara County, California, through means of interstate commerce, including the United States mails and the telephone. DELTA GROUP's principal purpose is the collection of debts.

41. DELTA GROUP is a "debt collector" as defined by 15 U.S.C. §1692(a)(6).

42. DELTA GROUP is a "debt collector" as defined by California Civil Code §1788.2.

43. FIRST CHOICE ASSETS, LLC (hereinafter "FIRST CHOICE") is a foreign Limited Liability Company corporation with a principal place of business at 3842 Harlem Rd., Suite

400-156, Buffalo, NY 14215, and who regularly engages in the business of collecting debts owed to third parties, and seeks to collect debts that have already gone into default.

44. FIRST CHOICE is not authorized to do business in the state of California.

45. FIRST CHOICE regularly engages in the business of collecting debts on its behalf in Santa Clara County, California, through means of interstate commerce, including the United States mails and the telephone.  FIRST CHOICE's principal purpose if the collection of debt.

46. FIRST CHOICE is a "debt collector" as defined by 15 U.S.C. §1692(a)(6).

47. FIRST CHOICE is a "debt collector" as defined by California Civil Code §1788.2.

48. JOSEPH COLISIMO (hereinafter "COLISIMO") is a natural person residing in the state of New York.

49. COLISIMO is an agent, owner, officer, director, principal, and/or employee of co-defendants FIRST CHOICE, DELTA GROUP, and EPSTEIN, LLC.  COLISIMO regularly engages in the business of collecting debts owed to third parties, and seeks to collect debts that have already gone into default.

50. COLISIMO regularly engages in the business of collecting debts on its behalf in Santa Clara County, California, through means of interstate commerce, including the United States mails and the telephone.

51. COLISIMO is a "debt collector" as defined by 15 U.S.C. §1692(a)(6).

52. COLISIMO is a "debt collector" as defined by California Civil Code §1788.

53. Defendant WILLIAM "BILL" JOHNSON (hereinafter "JOHNSON") is a natural person who, on information and belief, resides in the state of New York.

54. JOHNSON is an agent and/or employee of co-defendants FIRST CHOICE, DELTA GROUP, EPSTEIN, LLC, EVANS LAW ASSOCIATES, P.C., and/or THE LAW OFFICE

OF JASON J. EVANS, P.C.  JOHNSON regularly engages in the business of collecting
debts owed to third parties, and seeks to collect debts that have already gone into default.

55. JOHNSON regularly engages in the business of collecting debts on its behalf in Santa Clara
County, California, through means of interstate commerce, including the United States mails
and the telephone.

56. JOHNSON is a "debt collector" as defined by 15 U.S.C. §1692(a)(6).

57. JOHNSON is a "debt collector" as defined by California Civil Code §1788.

58. Any reference hereinafter to "Defendant" or "Defendants" or without further qualification is
meant by these Plaintiffs to refer to each Defendant named above, and or to other individual
employees or agents of these Defendants who names are not yet known. Each of the
defendants is an agent and/or employee of one another, and was acting in the scope of that
agency and/or employment when performing the acts or omissions noted herein.

## IV.  **FACTUAL ALLEGATIONS**

### *False Threats of Immediate Arrest*

59. On early Monday, August 28, 2006, a Defendant Johnson telephoned Plaintiff Helen Bunch.
Johnson left a message indicating that the matter was an emergency and that unless Mrs.
Bunch returned the call within 24-hours she would be immediately arrested.

60. At no time did Defendants provide Mrs. Bunch written notice of her rights under federal
and/or state law pursuant to 15 U.S.C. §1692g and or Civil Code §1812.700.

61. Johnson indicated the case was already sent to the police department and a warrant was
already issued for Mrs. Bunch's arrest.

62. Johnson left a return telephone number of 716-214-3160.

63. Johnson's call was in an attempt to collect a consumer debt for the Defendants listed above.

8

64. Mrs. Bunch received this message when she returned from work on the evening of August 28, 2006.

65. Mrs. Bunch was emotionally distraught over the alarming phone call and threat of arrest, and was unable to sleep that night.

66. On early Tuesday morning, August 29, 2006, Mrs. Bunch telephoned Defendant Johnson.

67. Johnson was not available.

68. The secretary, Tony Charles, indicated the name of the company was Delta Group, and the phone number was 716-204-3160.  Ms. Charles indicated she would have Bill Johnson return the call to Mrs. Bunch when Johnson returned.

69. Shortly thereafter, on the morning of August 29, 2006, Defendant Johnson telephoned Mrs. Bunch.

70. Johnson told Mrs. Bunch, "you have been a very bad girl."

71. Johnson stated that Chase bank had hired him to collect a debt, and there was a case number of 414336CA7569.

72. Johnson stated that there was a Chase credit card debt from 1992-1996, with an account number of 4246-1520-0557-3460.

73. Johnson falsely told Mrs. Bunch that she had spent $8,000.00 on the credit card and failed to pay. Johnson falsely said the debt was now $11,396.88. Johnson falsely stated that the last payment was made in 1996, and that Chase had now hired him to collect the debt.

### *Demand for Immediate Payment to Stop the Alleged Warrant*

74. Johnson demanded that Mrs. Bunch immediately wire $5,698.44, one-half of the total amount claimed, and demanded she also pay one-half of his legal fees, which were $1,670.00 in total.

75. Johnson told Mrs. Bunch that if she sent the $5,698.44 and $835.00 then he would call the police department and stop the warrant.

76. Johnson demanded that Mrs. Bunch go to Walmart immediately and send the money via "Moneygram."

77. Mrs. Bunch indicated she did not know what to do and started crying.

78. Johnson reiterated that Mrs. Bunch had been a "bad girl."

79. Johnson stated that he is aware that Mrs. Bunch may not remember making the charges, but that he was collecting the debt from Chase bank, and if Mrs. Bunch did not pay him, she was going to be arrested.

80. Mrs. Bunch had no recollection of these charges, and indeed, never had the alleged account.

81. Johnson instructed Mrs. Bunch to go to the Moneygram outlet at Walmart and to call him when she goes there.

82. Johnson told Mrs. Bunch that if she immediately complied with his demands that she would not be arrested.

83. Johnson told Mrs. Bunch that after Mrs. Bunch sent the demand money, he would provide documentation proving she actually owed the money.

84. Johnson never provided any documentation to Mrs. Bunch evidencing Mrs. Bunch owed such money.

### *Impersonating the Police Department*

85. At the end of the telephone call Defendant Johnson told Mrs. Bunch to hold on while he transferred her to the police department's Warrant Department.

86. Mrs. Bunch was placed on hold for a moment and then transferred to a young woman who answered the telephone, "Hello, this is the Warrant Department."

87. The woman in the "Warrant Department" did not identify herself.

88. The woman in the "Warrant Department" asked Mrs. Bunch for her date of birth, social security number, and indicated if she would pay within 24-hours the police would stop the warrant and the case.

*__Mrs. Bunch Coerced By Threat of Arrest into Making Immediate Payment at Walmart__*

89. Mrs. Bunch succumbed to Defendants' extortionist threats and immediately went to Walmart and called Defendant Johnson from Walmart.

90. Mrs. Bunch placed the call from Walmart to Johnson, at telephone number 716-204-3160, on or about at 10:58 a.m. on August 29, 2006.

91. Defendant Johnson asked Mrs. Bunch to pass the telephone to the Walmart cashier, Nancy.

92. Mrs. Bunch could hear Nancy talking to Defendant Johnson about immediately wiring the money to a company by the name of "First Choice Assets."

93. Defendant Johnson instructed Nancy to make two Moneygram transactions. Mrs. Bunch complied with the Defendants' and paid the demand money in the total amount of $6,552.94 (which included Moneygram costs). Mrs. Bunch stayed at Walmart for about a half an hour to insure the transactions went through.

94. After going to Walmart Mrs. Bunch had a dentist's appointment. Mrs. Bunch was in pain and had to have a tooth removed. Mrs. Bunch was shaking and crying from the incident, which served to exacerbate her physical pain.

*__Mrs. Bunch did not owe the debt__*

95. After paying Defendants' extortionist, Mrs. Bunch was finally able to reach her husband who had been out of the country on business.

96. Mrs. Bunch explained that she made the immediate payment out of fear of arrest. At that time Mrs. Bunch learned that the Bunch's did not even owe the alleged debt. At that time Mrs. Bunch came to realize that Defendants did not have the authority to have her arrested.

97. After speaking to her husband Mrs. Bunch went back to Walmart in an effort to stop the Moneygram transfer to First Choice Assets, but it was too late.

### *Follow-Up Calls to Mr. Johnson*

98. On August 30, 2006, Mrs. Bunch called Defendant Johnson.

99. A woman answered and said, "Is this Helen Bunch." The woman identified herself as Tony Charles and told Mrs. Bunch that Defendant Johnson was not there, but would be there in the afternoon.

100. Tony Charles could not confirm that any money had been received. Mrs. Bunch indicated her husband would be calling the next morning.

101. On August 30, 2007, being so stressed he was unable to sleep, Plaintiff Brad Bunch called Defendant Johnson from overseas.

102. Defendant Johnson told Mr. Bunch that he should have his wife call and give Mr. Johnson permission to talk to him. Defendant Johnson then abruptly hung up the phone.

103. Mr. Bunch called back the next day, disputed the debt, and explained that the Bunch's did not have the alleged credit card in the 1990's.

104. Defendant Johnson assured Mr. Bunch that these matters are thoroughly checked out, and that Defendants had all the documentation that relates to the credit card, the original contract and the signature card.

105. Defendant Johnson told Mr. Bunch that he would send documents to Plaintiffs proving that Mrs. Bunch owed the alleged debt. Defendant Johnson told Mr. Bunch that after receiving

and reviewing the documents, if Mr. Bunch believed there was some mistaken identity or the account was not real, then Plaintiffs could contact Defendant Johnson to get the money back.

106. Mr. Johnson said the account must be accurate since they check the signatures on the original credit application against the driver's license.

107. Defendant Johnson told Mr. Bunch that Defendant Delta Group worked with a law-firm, Joseph, Ortiz and Epstein, LLC, and that they were all working on this account.

### *Mr. Bunch's Efforts to Contact Government Authorities*

108. Mr. Bunch was so upset, humiliated and distressed by these events that he attempted to contact government authorities, and others in an effort to resolve the problem.

109. Mr. Bunch was unable to sleep due to these events so at 4:00 a.m. in the morning contacted the Amherst New York Police Department

110. Mr. Bunch also called the Buffalo, New York office of the Federal Bureau of Investigations.

111. Mr. Bunch contacted Visa International and Chase Visa. Mr. Bunch confirmed with these entities that the alleged account number given by Defendants was invalid and never existed.

### *Further Efforts to Communicate with Mr. Johnson*

112. On Friday, September 1, 2006, Mr. Bunch called Defendants again from overseas, to tell Defendant Johnson that he had investigated the matter, the money was not owed, and to demand the money back.

113. Mr. Bunch was told that Defendant Johnson was not available, and that Johnson was the only one he could speak to about the account.

114. Mr. Bunch called Defendants a few times that day; each time he was told Johnson was out to lunch or unavailable.

115. At one point Mr. Bunch left a detailed message with a woman, indicating he had investigated the matter, the money was not owed, and requested the money back and a return call.  Defendants did not return the call.

116. On September 5, 2006, the Mr. and Mrs. Bunch filed a police report with the San Jose Police Department.

***Communications with the Jason J. Evans (Evans Law Associates, P.C. & The Law Office of Jason J. Evans, P.C.)***

117. On September 5, 2007 after learning of the affiliation between Defendant Johnson and Defendants Evans Law Associate, P.C. and The Law Office of Jason J. Evans, Plaintiff Brad Bunch contacted the Evans Law Associates, P.C. and/or The Law Office of Jason J. Evans, P.C.

118. The woman who answered asked Mr. Bunch for the "Case #."

119. Mr. Bunch provided the case number.

120. The woman asked Mr. Bunch to hold on while she pulled the account up in the computer.

121. The woman then stated that she saw it was a credit card account.

122. She then said the alleged debt wasn't really in her office so she couldn't help him.  She said she had access to their files because Evans Law Associates, PC "helps" Delta Group collect money. She also said she would contact Delta Group and have Mr. Johnson call him back.

123. Mr. Bunch called Delta Group again and spoke to a Jake Lewis.  Mr. Lewis said Mr. Johnson was "down at the Courts."  Mr. Lewis told Mr. Bunch he would have Mr. Johnson call him back, but he never called back.

***Further Phone Calls to Simply Ask for the Money Back***

124. On September 7, 2006, Mr. Bunch called Defendants. A woman named Shelby answered. She indicated Mr. Johnson was out to dinner and there was no one else Mr. Bunch could talk to about the account.

125. On September 8, 2006, Mr. Bunch called Mr. Johnson again, and was able to finally speak to Defendant Johnson.

126. Defendant Johnson asked if Mr. Bunch had received the paperwork in reference to the account. Johnson falsely implied that Defendants had sent Mr. Bunch verification of the debt. Mr. Bunch disputed the debt again and indicated no such verification was received.

127. Mr. Johnson claimed he had received some "packet" from the original creditor, and that that there may have been "two Helen Bunches".

128. Mr. Johnson claimed it could be a case of mistaken identity, and that Defendants were cross-referencing the matter, and would be returning the money soon, if such were the case. Mr. Johnson and Mr. Bunch agreed to speak again on September 11, 2006 to resolve the matter.

129. On September 11, 2006, Mr. Bunch called Mr. Johnson, but was told that Defendant Johnson was not working that day.   Mr. Bunch spoke to Joe Trippi.

130. Mr. Bunch disputed the debt, told Mr. Trippi about Defendants' threat of arrest, and requested the money be returned.

131. Mr. Bunch indicated he had spoken to Chase and Chevy Chase bank and had learned no such account existed.

132. Mr. Trippi indicated the account did exist. However, Mr. Trippi said he had no obligation to prove the account existed.

133. When Mr. Bunch asked for proof the account existed Mr. Trippi said he did not have that information, only the owner did. However, he refused to reveal the name of the owner.

***Written Requests to the Owners to Return the Money***

134. Helen Bunch wrote First Choice Assets, Delta Group, Joseph Colisimo, and Jason J. Evans, disputing the debt, notifying them of the above, and asking them for the money back. Plaintiff also demanded that Defendant Johnson be terminated for his actions.

135. Defendants have not returned the money to Plaintiffs. On information and belief the Defendants have not terminated Defendant Johnson.

***Defendants' Contacting the Internal Revenue Service***

136. In or around January 30, 2007, Plaintiff received a 1099 tax form in the mail from Defendant Diverse Funding.

137. The 1099 tax form was also sent to the United States Internal Revenue Service.

138. The 1099 tax form indicated that the Plaintiff Helen Bunch had defaulted on the payment of debt.

139. The 1099 tax form contained false information.

140. The 1099 tax form states that the Defendant Diverse Funding had "cancelled" a debt in the amount of "$1,844.12."

141. The 1099 tax form indicates that the Plaintiff will be penalized for not reporting this "$1,844.12" to the Internal Revenue Service.

142. The 1099 tax form falsely informs the Internal Revenue Service that the Plaintiff did not pay a debt to "Chevy Chase Visa."

143. The 1099 tax form was created, and/or approved of by Defendant Jason J. Evans in an utterly reckless disregard of the Plaintiffs' rights.

1    ***Individual Defendants***

2    144. Defendant Joseph Colisimo participated in, approved of, and/or ratified the actions

3          complained of herein.

4    145. Defendant Jason J. Evans participated in, approved of, and/or ratified the actions

5          complained of herein.

6    ***Damages***

7    146. As a direct and proximate result of Defendants' outrageous conduct, its acts and omissions,

8          Plaintiffs have suffered financial loss, severe mental distress, mental suffering, and/or

9          mental anguish, including extreme fear, panic, worry, concern, stress, frustration,

10         nervousness, anxiety, crying fits, embarrassment and lack of concentration, amongst other

11         negative emotions.

12   147. Defendants actions were purposeful, malicious, and willful.

13   148. Defendants purposefully acted to defraud the Plaintiffs.

14   149. Defendants acted to oppress the Plaintiffs.

15   150. Defendants acted with malice towards the Plaintiffs.

16   151. Defendants acted with a conscious disregard for the Plaintiffs' rights.

17
18
19

## V.  <u>FIRST CAUSE OF ACTION - FDCPA</u>

20   152. Plaintiffs repeats, re-alleges, and incorporates by reference all of the paragraphs above as

21         though fully stated herein.

22   153. Defendants' acts and omissions, and course of conduct as more fully described above

23         constitute numerous and multiple violations of the FDCPA, 15 U.S.C. §1692 et seq.,

24         including but not limited to the violations §§ 1692d, 1692d(1), 1692d(2), 1692d(6),

25

1    1692e(1); 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(7), 1692e(8), 1692e(10),

2    1692e(11), 1692e(14) 1692f, and 1692g, amongst others.

3    154. As a result of Defendants' violations, Plaintiffs are entitled to recover statutory damages,

4        actual damages, reasonable attorney's fees, and costs, pursuant to 15 U.S.C. §1692k et seq.

## VI. SECOND CAUSE OF ACTION – ROSENTHAL FDCPA

7    155. Plaintiffs repeats, re-alleges, and incorporates by reference all of the paragraphs above as

8        though fully stated herein.

9    156. The foregoing acts and omissions by these Defendants with respect to Plaintiffs in their

10       attempts to collect a consumer debt from Plaintiffs constitute numerous and multiple unfair,

11       deceptive, misleading practices made unlawful pursuant to the California Rosenthal Fair

12       Debt Collection Practices Act, including but not limited to Civil Code §§ 1788-1788.32,

13       including §§ 1788.10, 1788.11, 1788.12, 1788.13, 1788.17, and Civil Code §1812.700.

14   157. Plaintiffs are entitled to recover statutory damages, actual damages, reasonable attorney's

15       fees and costs.

## VII. THIRD CAUSE OF ACTION - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

18   158. Plaintiffs repeats, re-alleges, and incorporates by reference all of the paragraphs above as

19       though fully stated herein.

20   159. Defendants' outrageous, abusive and intrusive acts constituted intentional infliction

21       of emotional distress.

22   160. Defendants engaged in outrageous conduct in calling Plaintiffs' home and threatening

23       immediate arrest and imprisonment.

24   161. Defendants' conduct was intentional or done with a reckless disregard of the probability of

18

causing emotional distress.

162. Plaintiffs suffered severe emotional distress as a direct result of Defendants' outrageous, abusive and intrusive conduct.

163. Plaintiffs' emotional distress was a direct and proximate result of Defendants' outrageous conduct.

164. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered damages in an amount to be determined by proof and a finder of fact at trial.

165. Defendants' insensitive and undignified tactics were not an aberration.

166. Defendant acted with oppression, fraud, and/or malice, thereby entitling Plaintiffs to punitive damages in an amount according to proof and a finder of fact at trial.

## VIII.  FOURTH CAUSE OF ACTION– INVASION OF PRIVACY

167. Plaintiffs repeats, re-alleges, and incorporate by reference all of the paragraphs above as though fully stated herein.

168. Defendants' outrageous, abusive, and undignified acts as described herein constituted intrusion upon Plaintiffs seclusion.

169. Defendants intruded upon the solitude or seclusion, private affairs or concerns of Plaintiffs.

170. The intrusion was substantial, and of a kind that would be highly offensive to an ordinary reasonable person.

171. The intrusion caused Plaintiffs to sustain injury, damage, loss or harm in the form of emotional distress mentioned above.

172. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered damages in an amount to be determined by proof and a finder of fact at trial.

173. Defendants acted with oppression, fraud, and/or malice, thereby entitling Plaintiffs to punitive damages in an amount according to proof and a finder of fact at trial.

## IX. FIFTH CAUSE OF ACTION  - FRAUD

174. Plaintiffs repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

175. The actions and omission of the Defendants herein constitute fraud in that Defendants made material, false representations to the Plaintiffs with the intent to defraud; Plaintiffs reasonably relied upon the representation; and the Plaintiffs suffered damages caused by the false representation.

176. Defendants falsely represented to the Plaintiff that Defendants had the legal right to attempt to collect the debt.

177. Defendants falsely represented to the Plaintiff that if Defendant did not pay the alleged debt, Plaintiff was going to be arrested.

178. Defendants' representations were false.

179. Plaintiffs reasonably relied upon Defendants representation.

180. Plaintiffs suffered damages caused by the misrepresentation in that Plaintiffs paid $6,552.94.

181. Plaintiffs' reliance on Defendants' false representations were the proximate cause of Plaintiffs' harm.

182. Defendants acted with oppression, fraud, and/or malice, thereby entitling Plaintiffs to punitive damages in an amount according to proof and a finder of fact at trial.

## X. SIXTH CAUSE OF ACTION - CONVERSION

183. Plaintiffs repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

184. The action of Defendants as described herein constitute the tort of conversion in that the Plaintiffs had a legal ownership interest in $6,552.94; the Defendants exercised unauthorized interference with said $6,552.94 by fraudulently inducing a payment from Plaintiffs; the actions of the Defendants were wrongful; and Defendants actions caused Plaintiffs damages.

185. The Defendants had an obligation to return such $6,552.94.

186. The actions of the Defendants caused the Plaintiffs damage.

187. The actions of the Defendants were fraudulent, oppressive and/or malicious.

188. Plaintiffs are entitled to punitive damages for the actions of the Defendants as described herein.

## XI.  SEVENTH CAUSE OF ACTION - UNJUST ENRICHMENT

189. Plaintiffs repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

190. Defendants received a benefit (in the form of money paid), and unjustly retained the benefit at the expense of Plaintiffs.

191. Defendants acted with oppression, fraud, and/or malice, thereby entitling Plaintiffs to punitive damages in an amount according to proof and a finder of fact at trial.

## XII. EIGHTH CAUSE OF ACTION – LIBEL

192. Plaintiffs repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

193. Defendants Diverse Funding, Evans Law Associates, P.C., The Law Office of Jason J.

Evans, P.C. and Jason J. Evans, made a false and unprivileged writing which exposed Plaintiffs to hatred, contempt, ridicule and/or obloquy, in sending a false Form 1099 to the Internal Revenue Service. Said Form 1099 identified Plaintiff "Helen Bunch" as a debtor. Said 1099 form indicated that Plaintiff had not paid a debt of "$1,844.12". Said 1099 form indicated that the alleged debt had been "cancelled" on "12/31/06".

194. Defendants actions proximately caused Plaintiff's to suffer financial harm.

195. Defendants acted with oppression, fraud, and/or malice, thereby entitling Plaintiffs to punitive damages in an amount according to proof and a finder of fact at trial.

## XIII.  NINTH CAUSE OF ACTION - TORT IN SE

196. Plaintiffs repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

197. Defendants violated a statutory duty to another and are thus liable under the doctrine of "Tort-in-se."

198. Defendants engaged in an unlawful course of conduct in violation of 15 U.S.C. 1692 et seq.

199. Defendants engaged in an unlawful course of conduct in violation of Civil Code 1788 et seq.

200. Plaintiffs are entitled to recover actual and punitive damages.

201. Defendants acted with oppression, fraud, and/or malice, thereby entitling Plaintiffs to punitive damages in an amount according to proof and a finder of fact at trial.

## XIV. TENTH CAUSE OF ACTION - NEGLIGENT HIRING, RETENTION, SUPERVISION, TRAINING

202. Plaintiffs repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

203. Defendants (with the exception of William "Bill" Johnson) were negligent in the hiring, training, retention, and/or supervision of its employees and of the co-defendants. Defendants' actions and omissions constitute negligence in that Defendants owed Plaintiffs a duty, said duty was breached, and said breach was the proximate cause of damages suffered by Plaintiffs.

204. The actions and omissions of Defendants as described herein constitute grossly negligent hiring, training, retention, and/or supervision in that Defendants owed Plaintiffs a duty, said duty was breached, said breach was the proximate cause of damages suffered by Plaintiffs, and Defendants' actions and omissions demonstrate a want of scant care and an indifference to the rights of Plaintiffs. Defendants acted with fraud, oppression or malice. The actions of Defendants were highly unreasonable and demonstrate an extreme departure from ordinary care.

205. Plaintiffs are entitled to punitive damages for the actions and omissions of the Defendants as described herein.

## XV. **ELEVENTH CAUSE OF ACTION – CRIMINAL CONDUCT**

206. Plaintiffs repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

207. Defendants engaged in an unlawful and criminal course of conduct by making obscene and offensive telephone calls, making extortionist threats, and converting Plaintiffs' funds.

208. Plaintiffs are entitled to recover actual and punitive damages.

209. Defendants acted with oppression, fraud, and/or malice, thereby entitling Plaintiffs to punitive damages in an amount according to proof and a finder of fact at trial.

23

1    **WHEREFORE, Plaintiffs respectfully prays that judgment be entered against the**

2    **Defendants for the following:**

3        A.  Statutory damages pursuant to 15 U.S.C. § 1692k

4        B.  Statutory damages pursuant to California Civil Code § 1788.17 and 1788.30.

5        C.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692(k),

6            California Civil Code § 1788.17 and Civil Code § 1788.30.

7        D.  Actual and punitive damages.

8        E.  For such other and further relief as may just and proper.

9

10

11   Respectfully submitted,

12
     /s/Ronald Wilcox                            7/23/07
13   Ronald Wilcox                               Date
     Attorney for Plaintiffs
14

15                              **DEMAND FOR JURY TRIAL**

16

17   Please take notice that Plaintiffs demand trial by jury in this action.

18
     /s/Ronald Wilcox                            7/23/07
19   Ronald Wilcox                               Date

20

21

22

23

24

25

**June Coleman**

**From:**    Henry S. Hewitt [hhewitt@ebhw.com]
**Sent:**    Wednesday, May 07, 2008 5:31 PM
**To:**    June Coleman; Cindy Salvo; Ronald Wilcox; Joe Mauro
**Cc:**    Jennifer Mueller; File
**Subject:** RE: 08.5.1 Bunch v Delta Group - mediation

Dear Counsel --

   I have just completed a phone conversation with June concerning the usefulness of going forward with the mediation on May 12th. It is my understanding that one of the two plaintiffs cannot appear and that the defendant, who may have the greatest exposure, cannot appear because his wife is expecting a child on the 12th. In addition, the remaining defendants have problems appearing from New Jersey, although the court has denied their request to be excused.

   Please advise me if this is generally the current status, and, if not, what the facts are. Also, please explain, given your view of the present status, what you think the pros and cons of going forward with the mediation on the 12th are.

   Thank you.

   Henry Hewitt

**From:** June Coleman [mailto:JColeman@ecplslaw.com]
**Sent:** Tuesday, May 06, 2008 5:12 PM
**To:** Henry S. Hewitt; Cindy Salvo; Ronald Wilcox; Joe Mauro
**Cc:** Jennifer Mueller
**Subject:** RE: 08.5.1 Bunch v Delta Group - mediation

We have not heard from Ron Wilcox or Joe Mauro on this issue – I hope to hear from them soon so we can discuss this issue. I will continue to cc you on our attempts at contact Henry.


June D. Coleman
Ellis Coleman Poirier La Voie & Steinheimer LLP
555 University Avenue, Suite 200 East
Sacramento, CA 95825
916-283-8820
fax: 916-283-8821
JColeman@ecplslaw.com

CONFIDENTIALITY - This e-mail message and any attachments thereto are for the sole use of the intended recipient(s) and contains a private, confidential communication protected by the attorney client privilege and the attorney work product doctrine. Any unauthorized review, use, disclosure or distribution of this e-mail is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.


**From:** Henry S. Hewitt [mailto:hhewitt@ebhw.com]
**Sent:** Tuesday, May 06, 2008 5:06 PM



EXHIBIT

B

**To:** June Coleman; Cindy Salvo; Ronald Wilcox; Joe Mauro
**Cc:** Jennifer Mueller
**Subject:** RE: 08.5.1 Bunch v Delta Group - mediation

Hello All --

   Has it been agreed that the mediation is going to be continued, with the only issue being the date? Or, is there still a possibility will be be going forward on May 12th?

   Thank you.

   Henry Hewitt

---

**From:** June Coleman [mailto:JColeman@ecplslaw.com]
**Sent:** Tuesday, May 06, 2008 4:31 PM
**To:** Cindy Salvo; Ronald Wilcox; Joe Mauro
**Cc:** Jennifer Mueller; Henry S. Hewitt
**Subject:** RE: 08.5.1 Bunch v Delta Group - mediation

Ron – I just left you a voice mail. I've sent you and Joe an email on Friday and again today. Cindy sent you both one on Monday and the mediator sent one on Friday to you both. Please contact me at your earliest convenience to discuss rescheduling the mediation. Let's not drag our feet on this.


June D. Coleman
Ellis Coleman Poirier La Voie & Steinheimer LLP
555 University Avenue, Suite 200 East
Sacramento, CA 95825
916-283-8820
fax: 916-283-8821
JColeman@ecplslaw.com

CONFIDENTIALITY - This e-mail message and any attachments thereto are for the sole use of the intended recipient(s) and contains a private, confidential communication protected by the attorney client privilege and the attorney work product doctrine. Any unauthorized review, use, disclosure or distribution of this e-mail is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

---

**From:** Cindy Salvo [mailto:csalvo@salvolawfirm.com]
**Sent:** Monday, May 05, 2008 10:10 AM
**To:** 'Ronald Wilcox'; 'Joe Mauro'
**Cc:** June Coleman; Jennifer Mueller
**Subject:** RE: 08.5.1 Bunch v Delta Group - Order Denying Request
**Importance:** High

Can we reschedule the mediation for June 19th while the mediator still has that date available? I can then inform my clients of the date and hopefully all, including Mr. Colosimo, will be able to attend. Let's not sit on this! Thanks.

Cindy D. Salvo, Esq.
The Salvo Law Firm, P.C.
101 Eisenhower Parkway
Suite 300
Roseland, New Jersey 07068

5/8/2008

(973) 795-1228
(973) 226-7732 (direct dial)
(973) 228-6492 (fax)
www.salvolawfirm.com

**From:** Henry S. Hewitt [mailto:hhewitt@ebhw.com]
**Sent:** Friday, May 02, 2008 5:20 PM
**To:** June Coleman; Ronald Wilcox; Joe Mauro
**Cc:** Jennifer Mueller; Cindy Salvo
**Subject:** RE: 08.5.1 Bunch v Delta Group - Order Denying Request

   I am presently available on June 19th.  The next week I plan to be on vacation.  Please keep me posted on what you and the court work out.


   Thanks.


   Henry Hewitt


**From:** June Coleman [mailto:JColeman@ecplslaw.com]
**Sent:** Friday, May 02, 2008 1:30 PM
**To:** Ronald Wilcox; Joe Mauro; Henry S. Hewitt
**Cc:** Jennifer Mueller; Cindy Salvo
**Subject:** FW: 08.5.1 Bunch v Delta Group - Order Denying Request

Ron/Joe-

I'm really not sure how this got flummoxed up.  My secretary has told me on a number of different occasions that defendants' request for Diverse Funding and Evans to attend via phone was sent to you and Magistrate Brazil on or about April 8th.  Indeed, you were aware of our intent to do so for some time.  I left for my vacation out of the county on April 10th.  When I returned on April 25th, I discovered that Cindy and Joe and negotiated that Mr. Colosimo and Mr. Bunch would appear by telephone.  I had my secretary check with Magistrate Brazil's chambers to see why he had not yet ruled on our request.  Now I understand that Ron objected because the request was untimely.

The bottom line is that Diverse Funding and Mr. Evans believed, albeit wrongfully, that they did not have to attend on May 12th.  They are not available to attend on May 12th.  Mr. Bunch and Mr. Colosimo can't attend on May 12th either.  Moreover, the allegations in the complaint make clear that even in the light most favorable to plaintiffs, almost all of the wrongs alleged were committed by Mr. Colosimo's company – not Diverse Funding or Mr. Evans and his law firm.  (And we believe that there are defenses on behalf of Mr. Colosimo and his company, don't get me wrong.)  With that being said, we have a mediation scheduled where one of the plaintiffs can't attend, the representative of the company with most of the allegations of wrongdoing can't attend, and the other two defendant representatives can't attend.  If this case is going to settle at the mediation, I would suggest to everyone that Mr. Colosimo has to be present.

I would propose that we continue the mediation until a Thursday or Friday in June – latter half of June.  June 27th or June 19th would be my preference.  (If necessary, and if Cindy Salvo does not appear, I will make myself available on June 20th.)  I will also take the laboring oar to prepare the stipulation and proposed order for Judge Brazil.  We will also stipulate that Joe Colosimo will appear on the date finally agreed.  Mr. Bunch should be available by then too, right?  (We will stipulate that Mr. Bunch does not have to attend the mediation on the new date, but he might prefer to.)

I need a response ASAP!!!!


June D. Coleman

Ellis Coleman Poirier La Voie & Steinheimer LLP
555 University Avenue, Suite 200 East
Sacramento, CA 95825
916-283-8820
fax:  916-283-8821
JColeman@ecplslaw.com

CONFIDENTIALITY - This e-mail message and any attachments thereto are for the sole use of the intended recipient(s) and contains a private, confidential communication protected by the attorney client privilege and the attorney work product doctrine. Any unauthorized review, use, disclosure or distribution of this e-mail is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.